**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEYBANC CAPITAL MARKETS INC.,<br><br>Plaintiff,<br><br>– against –<br><br>TANDEM MANAGEMENT, INC., TANDEMHR, INC., and TANDEM ADMINISTRATIVE MANAGEMENT GROUP, INC.,<br><br>Defendants. | Case No. 1:21-cv-2939<br><br>**COMPLAINT** |

Plaintiff KeyBanc Capital Markets Inc. ("KBCM" or "Plaintiff"), for its Complaint against Defendants Tandem Management, Inc., TandemHR, Inc. and Tandem Administrative Management Group, Inc. (together, "Tandem" or "Defendants"), states as follows:

## OVERVIEW

1. This action stems from Tandem's failure to pay compensation owed to KBCM, an investment bank, as Tandem's sole and exclusive financial advisor pursuant to a written engagement agreement.

2. Tandem agreed to pay KBCM a "transaction fee" based on "transaction value" if Tandem consummated a qualifying "transaction" within a 12-month tail period after termination of the parties' agreement.

3. Tandem consummated such a qualifying transaction within the 12-month tail period but refuses to pay KBCM the transaction fee owed under the agreement and refuses to provide all contractually required information about the qualifying transaction.

4. Because there has been a qualifying transaction during the tail period, Tandem owes KBCM at least the minimum transaction fee of $1,000,000 specified in the agreement.

5. More likely, based on the apparent transaction value of the qualifying transaction,

Tandem owes KBCM more than the minimum transaction fee – the exact amount to be determined after Tandem provides the necessary information to complete the calculation called for by the agreement, pursuant to an order of specific performance if necessary.

6. Tandem also owes KBCM reasonable out-of-pocket expenses of $18,949.67.

7. In addition, pursuant to an express fee-shifting provision in the agreement, KBCM is entitled to be reimbursed for its legal fees in pursuing this recovery from Tandem.

## PARTIES

8. Plaintiff KBCM is an Ohio corporation with its principal place of business in Cleveland, Ohio.

9. Based on information and belief, Defendant Tandem Management, Inc. is an Illinois corporation with its principal place of business in Westchester, Illinois.

10. Based on information and belief, Defendant TandemHR, Inc. is an Illinois corporation with its principal place of business in Westchester, Illinois.

11. Based on information and belief, Defendant Tandem Administrative Management Group, Inc. is an Illinois corporation with its principal place of business in Westchester, Illinois.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

13. This Court has personal jurisdiction over Defendants because they have consented to the "exclusive jurisdiction" of this Court and have agreed that any dispute arising out of the parties' agreement "shall be" commenced in this Court (or a state court located in the City and County of New York).  In particular, in Section 12 of Appendix A of the parties' written engagement agreement, the parties agreed: "Except as set forth below, the parties agree that any

dispute, claim or controversy directly or indirectly relating to or arising out of this agreement, the termination or validity of this agreement, any alleged breach of this agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this agreement to this Section 12 (any of the foregoing, a 'Claim') shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of internal laws of the State of New York without regard to principles of conflicts of law. The Company and KBCM agree and consent to personal jurisdiction, service of process and venue of such courts, and agree not to assert the defense of forum non-conveniens. The Company and KBCM also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier or personally delivered."

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, in the engagement agreement, the parties expressly agreed and consented to "venue" in this Court. *Id*.

## FACTS

### The Engagement

15. Plaintiff KBCM is an investment bank, which provides, among other things, financial advice and assistance in connection with potential transactions.

16. Defendants Tandem Management, Inc., TandemHR, Inc., and Tandem Administrative Management Group, Inc., are three of the management arms of a collection of related business entities owned by Bruce Leon and his family, doing business as the Tandem Family of Companies – a human resource outsourcing company or professional employer organization (known as a PEO) providing custom HR solutions to businesses of all sizes.

dispute, claim or controversy directly or indirectly relating to or arising out of this agreement, the termination or validity of this agreement, any alleged breach of this agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this agreement to this Section 12 (any of the foregoing, a 'Claim') shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of internal laws of the State of New York without regard to principles of conflicts of law. The Company and KBCM agree and consent to personal jurisdiction, service of process and venue of such courts, and agree not to assert the defense of forum non-conveniens. The Company and KBCM also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier or personally delivered."

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, in the engagement agreement, the parties expressly agreed and consented to "venue" in this Court. *Id*.

## FACTS

### The Engagement

15. Plaintiff KBCM is an investment bank, which provides, among other things, financial advice and assistance in connection with potential transactions.

16. Defendants Tandem Management, Inc., TandemHR, Inc., and Tandem Administrative Management Group, Inc., are three of the management arms of a collection of related business entities owned by Bruce Leon and his family, doing business as the Tandem Family of Companies – a human resource outsourcing company or professional employer organization (known as a PEO) providing custom HR solutions to businesses of all sizes.

17. In January 2019 Tandem, through Bruce Leon (founder and officer) and Tanya Yakhnis (CFO), engaged KBCM to act as its "sole and exclusive financial advisor" in connection with a possible transaction.

18. The terms of this engagement are memorialized in a written agreement between KBCM and the Tandem Family of Companies, including all three Defendants, dated January 24, 2019 (the "Engagement Agreement").

19. Tandem is in possession of a copy of the Engagement Agreement.

20. The Engagement Agreement is a binding, written contract.

21. The Engagement Agreement contains a number of provisions relevant to this action.

22. **Exclusivity.** The Engagement Agreement provides that KBCM is to act as the "sole and exclusive financial advisor" to Tandem in connection with the pursuit of a potential transaction. (p. 1.) It also provides: "No fee payable to any other financial advisor by [Tandem] or any other company in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to KBCM under the [Engagement Agreement]." (Appendix A, ¶ 7.)

23. **Definition of Transaction.** The term "Transaction" is defined in the second paragraph of the Engagement Agreement: "the term 'Transaction' shall mean, whether effected directly or indirectly or in one of a series of transactions, (a) any merger, consolidation, reorganization, recapitalization or other transaction or series of related transactions pursuant to which all or a material portion of the businesses, assets or other divisions of the Company is acquired by or combined with another person or entity or (b) the acquisition of (i) all or a material portion of the businesses, assets or divisions of the Company or (ii) securities

4

representing 50% or more of the total voting power of the Company, in any case, whether by way of merger or consolidation, reorganization, recapitalization or restructuring, tender or exchange offer, share exchange, option or negotiated purchase, leveraged buyout, lease or license, investment or partnership, joint venture, spin-off, split-off or otherwise (each of the transactions referenced in clauses (a) and (b) above is hereinafter referred to as a 'Transaction')."

24. **Transaction Fee**. Tandem agreed to pay KBCM a "Transaction Fee" promptly upon consummation of a Transaction. The Transaction Fee is to be "the greater of (i) $1,000,000, or (ii) a percentage of the Transaction Value (as defined below), payable in full promptly upon consummation of a Transaction, and determined in accordance with" a specified schedule of percentages. (Section II.A of the Engagement Agreement.)

25. **Transaction Value**. The definition of Transaction Value is comprehensive and includes, among other things, cash payments, the fair market value of equity and similar rights, and the fair market value of deferred or contingent payments, such as earnouts. (Section II.)

26. **Expenses**. Tandem agreed to pay KBCM all reasonable out-of-pocket expenses incurred in connection with the performance of its services, subject to certain caps not applicable here. (Section III.)

27. **Termination**. The Engagement Agreement may be terminated with or without cause by KBCM or Tandem at any time upon 30-days' written notice, though certain obligations, including "tail period" obligations, continue after termination. (Section IV.)

28. **Tail Period**. The Engagement Agreement provides that "if a Transaction is consummated within 12 months of the termination of KBCM's engagement (the 'Tail Period') or if a definitive agreement or letter of intent or other evidence of commitment with respect to such a Transaction which is subsequently consummated is entered during the Tail Period, [Tandem]

will pay KBCM the Transaction Fee in accordance with the terms of this letter agreement." (Section IV.)

29. There is no requirement in the Engagement Letter that KBCM must have introduced or identified the counterparty to the Transaction or must have been the procuring cause of the Transaction in order to be entitled to the Transaction Fee.

30. **Information**. The Engagement Agreement provides: "Upon request, [Tandem] will make available to KBCM any information available to it for purposes of calculating the amount of any component of the Transaction Value." (Section II.)

31. **Legal Fees**. The Engagement Agreement provides: "If the Transaction Fee is not paid in full within 10 business days following consummation of any Transaction, then [Tandem] agrees that it will be responsible for all fees and expenses incurred by KBCM (including reasonable fees and disbursements of KBCM's legal counsel) in connection with any action, suit or proceeding instituted in order to enforce [Tandem's] obligation to pay KBCM the Transaction Fee and/or to reimburse KBCM for expenses as provided by this letter agreement." (Section IV.)

32. **Governing Law**. The Engagement Agreement provides that it shall be governed by and construed in accordance with the laws of the State of New York. (Appendix A, ¶¶ 11-12.)

33. In 2019, some of Tandem's clients were based in New York. Tandem authorized KBCM to market a Tandem transaction to potential counterparties based in New York. KBCM has offices in New York City.

34. As federal courts in New York have noted, it is common in the investment banking field for investment banks to be contractually entitled to fees even when they do not arrange or facilitate the qualifying transaction.

35. This is especially true where, as here, the bank has been engaged on an exclusive basis, and there is no requirement in the parties' agreement that the bank must have introduced or identified the counterparty to the transaction or must have been the procuring cause of the transaction in order to be entitled to a transaction fee.

36. KBCM provided its financial advisory services to Tandem in pursuit of a potential Transaction for over a year.

37. KBCM expended substantial effort to market Tandem to potential transaction counterparties, including preparing a confidential information memorandum; identifying and approaching, and soliciting offers from, acceptable purchasers, as approved by Tandem; advising and assisting Tandem in evaluating the various structures and forms of potential transactions; evaluating proposals; coordinating due diligence, including creating and running a data room, preparing financial models; and generating other financial advisory work product.

38. During the term of the engagement, Tandem seriously explored two different potential transactions with two separate players in the PEO industry, with KBCM's assistance, but those potential transactions ultimately did not move forward.

**The Termination, Subject to Tandem's "Continuing Obligations"**

39. On March 5, 2020, Bruce Leon, on behalf of Tandem, issued a notification of termination of KBCM's services under the Engagement Agreement.

40. As Mr. Leon stated in the notification: "We value your efforts but believe it is in our best interest to terminate the marketing process at this point. We understand our continuing obligations under our investment banking agreement with you and will of course abide by them. I have a decent feeling our paths may cross again in the future."

41. The reference to "continuing obligations" in the termination notification is, in effect, an acknowledgment of Tandem's obligation to pay KBCM a Transaction Fee if a

Transaction is consummated within the Tail Period; the obligation to pay KBCM's expenses; and the obligation to provide KBCM "any information" needed to calculate any component of the Transaction Value (which is in turn a component of the calculation of the Transaction Fee).

42. KBCM is not challenging Tandem's right to terminate the Engagement Agreement. Rather, KBCM is challenging Tandem's failure to abide by its "continuing obligations" that survived the termination, including its obligation to pay KBCM a Transaction Fee when Tandem consummated a qualifying Transaction during the 12-month Tail Period following termination and its obligation to provide information about the Transaction.

### The Tandem/Shore Transaction

43. Tandem did not notify KBCM of the consummation of any Transaction during the Tail Period.

44. However, in early 2021, KBCM learned through public media reports that Tandem had consummated some kind of transaction with an affiliate of Shore Capital Partners during the 12-month Tail Period following termination of the Engagement Letter (the "Tandem/Shore Transaction").

45. Indeed, Shore Capital Partners issued a press release with some information about the Tandem/Shore Transaction.

46. KBCM reached out to Tandem, seeking specific information about the Tandem/Shore Transaction so KBCM could determine whether Tandem owed KBCM a Transaction Fee under the Engagement Agreement and, if so, how much.

47. Per Section II of the Engagement Agreement, Tandem is required to "make available to KBCM any information available to it for purposes of calculating the amount of any component of Transaction Value."

48. In particular, KBCM requested a final executed copy of the purchase agreement

with the buyer in the Tandem/Shore Transaction in order to get comfortable with being able to finalize a proper invoice.

49. Tandem did not provide a copy of the purchase agreement.

50. Instead, Tandem, through counsel, parceled out bits and pieces of incomplete information about the Tandem/Shore Transaction.

51. In particular, Tandem's counsel provided to KBCM a one-and-a-half-page summary of the Tandem/Shore Transaction but did not provide any underlying transaction documents or other verifiable information of this private transaction.

52. According to the summary provided by Tandem's counsel: the Tandem/Shore Transaction closed on December 29, 2020; the Buyer was an affiliate of Shore Capital Partners; the Sellers (Leon family interests) transferred 100% of the equity of various Tandem entities to the Buyer; and the consideration is described as an amount that, if accurate, would entitle KBCM to a Transaction Fee greater than the minimum fee.

53. Based on this summary description alone, it is clear that the Tandem/Shore Transaction is a Transaction (*i.e.*, a sale of securities representing 50% or more of the total voting power of Tandem or the acquisition of all or a material part of the businesses, assets or divisions of Tandem) that occurred during the Tail Period (the 12 months after termination), giving rise to an obligation on the part of Tandem to pay a Transaction Fee to KBCM under the Engagement Agreement.

54. Tandem's obligation to pay at least the $1,000,000 minimum Transaction Fee has been triggered.

55. Furthermore, based on the summary's description of the aggregate consideration, the amount of the Transaction Fee could exceed the $1,000,000 minimum fee by a significant

percentage.

56. However, despite requests, Tandem has not provided KBCM with sufficient information to prepare a precise and verifiable calculation of the "greater than" portion of the definition of Transaction Fee in the Engagement Agreement.

57. KBCM suspects discovery will show that Tandem leveraged KBCM's work product, knowledge and proposed transaction structuring ideas to facilitate the Tandem/Shore Transaction without KBCM's direct involvement.

### KBCM's Demand and Tandem's Breaches

58. On March 17, 2021, KBCM's counsel sent a demand letter to Tandem's counsel seeking additional information about the Tandem/Shore Transaction; seeking payment of the Transaction Fee; and seeking payment of its reasonable out-of-pocket expenses totaling $18,949.67 as evidenced by an itemized invoice.

59. On March 26, 2021, Tandem's counsel sent a response letter stating that Tandem does not owe KBCM a Transaction Fee and declining to provide additional information about the Tandem/Shore Transaction. Ironically, though it refuses to provide to KBCM more information about the Tandem/Shore Transaction, Tandem demanded more information from KBCM about its invoice for $18,949.67 in expenses before Tandem will considering paying that invoice.

### Count I
### (Breach of Contract – Specific Performance to Remedy Failure to Provide Information)

60. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-59 of this Complaint, as if fully set forth herein.

61. The Engagement Agreement is a valid, binding contract signed by sophisticated parties.

62. KBCM has fully performed its duties to Tandem under the Engagement

Agreement, including by providing the requisite financial advisory services to Tandem during the term of the engagement.

63. Tandem has failed, without justification, to perform its duties to KBCM, including by failing to provide information necessary and proper to calculate and verify the amount of the Transaction Value and the Transaction Fee.

64. KBCM is being irreparably harmed by Tandem's failure to provide "any information available" to Tandem for purposes of calculating the amount of any component of the Transaction Value.

65. Without such information, KBCM cannot calculate or verify the Transaction Value and the Transaction Fee (which is the greater of $1 million or a percentage of Transaction Value).

66. By improperly failing to provide contractually required information, Tandem is putting KBCM at an inequitable disadvantage by depriving it of the means necessary to calculate and quantify its monetary damages.

67. KBCM has performed its obligations, and Tandem is capable of performing its obligation to provide "any information available" but simply refuses to do so.

68. There is no other adequate remedy at law regarding Tandem's failure to provide information.

69. Tandem should be ordered, pursuant to the remedy of specific performance, to provide any information available for purposes of calculating the amount of any component of the Transaction Value, including final executed copies of all transaction documents and schedules and any documents between Tandem and Buyer that reference or implicate KBCM's rights under the Engagement Agreement.

70. Tandem should also be ordered to reimburse KBCM's attorneys' fees expended to obtain specific performance, per the Engagement Agreement.

## Count II
### (Breach of Contract – Damages for Failure to Pay Transaction Fee and Expenses)

71. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-70 of this Complaint, as if fully set forth herein.

72. The Engagement Agreement is a valid, binding contract signed by sophisticated parties.

73. KBCM has fully performed its duties to Tandem under the Engagement Agreement, including by providing the requisite financial advisory services to Tandem during the term of the engagement.

74. Tandem has failed, without justification, to perform its duties to KBCM, including by failing to pay the Transaction Fee and the invoiced, itemized expenses owed to KBCM under the Engagement Agreement.

75. As a direct and proximate result of Tandem's breaches of contract and failure to pay amounts due, KBCM has been damaged in the amount of the Transaction Fee (which is the greater of $1,000,000 or a specified percentage of the Transaction Value, which has yet to be verified) and in the amount of its expenses ($18,949.67), plus interest and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KeyBanc Capital Markets Inc. prays for relief and judgment as follows:

A. Ordering Defendants to provide, pursuant to the remedy of specific performance, any information available for purposes of calculating the amount of any component of the Transaction Value of the Tandem/Shore Transaction, including final

executed copies of all transaction documents and schedules and any other information available to Tandem that has a bearing on the calculation of any component of Transaction Value; and to reimburse KBCM's attorneys' fees expended to obtain specific performance, per the Engagement Agreement;

  B. Awarding damages to Plaintiff in an amount to be determined at the time of trial or earlier judgment, but not less than $1,018,949.67;

  C. Interest and reasonable attorneys' fees and other costs and expenses; and

  D. Such other and further relief as this Court may deem just and proper.

Dated: April 6, 2021        Respectfully submitted,

             **THOMPSON HINE LLP**

          By: */s/Emily J. Mathieu*
            Emily J. Mathieu
            335 Madison Avenue
            12th Floor
            New York, NY  10017
            Telephone:  (212) 344-5680
            Facsimile:  (212) 344-6101
            Emily.Mathieu@ThompsonHine.com

            Brian J. Lamb
            *(Pro hac vice* application forthcoming)
            3900 Key Center
            127 Public Square
            Cleveland, OH  44114
            Telephone: (216) 566-5500
            Facsimile:  (216) 566-5800
            Brian.Lamb@ThompsonHine.com

            *Attorneys for Plaintiff*
            *KeyBanc Capital Markets Inc.*